## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

JACOB GUTHRIE

Plaintiff,

v.

PETE HEGSETH, in his official capacity as
Secretary of Defense, and TROY E. MEINK,
in his official capacity as Secretary of the Air
Force, and BRIAN S. ROBINSON, in his
official capacity as Commander of Air
Education and Training Command

Defendants.

Civil Action No. 1:25-cv-02179

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Jacob I. Guthrie ("Plaintiff"), by and through undersigned counsel, hereby brings this

action for declaratory and injunctive relief against Pete Hegseth, in his official capacity as

Secretary of Defense, Troy E. Meink, in his official capacity as Secretary of the Air Force, and

Brian S. Robinson, in his official capacity as Commander of Air Education and Training

Command ("Defendants"), challenging current military policies that categorically disqualify

individuals with a history of bariatric surgery from enlisting in the United States Air Force,

even when such individuals present substantial medical evidence confirming full recovery and

current fitness for duty.

## STATEMENT OF THE CASE

1. Since 2007, the Department of Defense (DoD) has imposed a ban on service members
   and recruits that have underwent bariatric surgery. Consequently, United States Air
   Force has categorically disqualified applicants who have undergone bariatric
   procedures such as laparoscopic sleeve gastrectomy, regardless of individualized

recovery and demonstrated medical fitness. These policies ignore advances in medical science and operate in direct contravention to modern standards of surgical success and post-operative recovery. This action challenges the legality and constitutionality of Defendants' refusal to consider Jacob I. Guthrie's individualized medical evidence demonstrating full physical readiness and deployability.

2. In 2022, Mr. Guthrie underwent laparoscopic sleeve gastrectomy to improve long-term health outcomes. Since then, he has achieved complete clinical recovery, sustained weight loss, and superior physical performance. Independent board-certified surgeons have confirmed that he exhibits no functional limitations, complications, or nutritional deficiencies and is fully deployable under Air Force standards. Despite this compelling medical record, the Air Force has denied his enlistment solely on the basis of his prior surgery, under a blanket policy with no mechanism for individualized evaluation.

3. The substantial medical advancements surrounding bariatric surgery should have led to a corresponding shift in military accession policies. Instead, Defendants have maintained and enforced a categorical bar that is both scientifically outdated and legally indefensible. The refusal to consider individualized medical evidence or process an Exception to Policy (ETP) request violates basic principles of administrative fairness and medical rationality.

4. Jacob Guthrie is a civilian applicant seeking to serve in the Air Force. He is medically, mentally, and morally qualified under all other criteria, with ASVAB scores and educational qualifications that place him in eligibility for high-demand Air Force Specialty Codes. Yet, he remains barred from enlistment based solely on a resolved and well-managed medical history, without consideration of expert medical findings.

5. The Air Force's unyielding and medically unjustified policy barring enlistment of

individuals with a history of bariatric surgery violates the equal protection guarantees of the Fifth Amendment and the Administrative Procedure Act (APA). Absent judicial intervention, candidates like Mr. Guthrie will be discriminatorily and arbitrarily excluded from military service, despite their physical qualifications and proven commitment to serve.

## PARTIES

6.  Plaintiff Jacob I. Guthrie is a 21-year-old resident of New York and a U.S. citizen. He holds a Bachelor of Science degree, has passed all Air Force enlistment screening steps, and has no moral, educational, or physical disqualifiers except for the history of laparoscopic sleeve gastrectomy—a medically successful and fully resolved condition. He seeks enlistment in the United States Air Force and would do so immediately if the current accession bar were lifted or subjected to individualized medical review.

7.  Defendant Pete Hegseth is the Secretary of the U.S. Department of Defense. He is responsible for overseeing all Department of Defense regulations, including those governing military enlistment and medical accession standards. He is sued in his official capacity.

8.  Defendant Troy E. Meink is the Secretary of the Air Force and is responsible for the administration and enforcement of policies, procedures, and regulations pertaining to the enlistment of Air Force personnel. He is sued in his official capacity.

9.  Defendant Brian S. Robinson is the Commander of Air Education and Training Command. He exercises oversight over the Air Force recruiting and accession process. He is sued in his official capacity.

## JURISDICTION AND VENUE

10. Subject matter jurisdiction exists under 28 U.S.C. § 1331 because this action arises under, is founded upon, and seeks to redress the deprivation of rights secured by the United States Constitution and federal statutory law.

11. Venue is proper in the District of Columbia under 28 U.S.C. § 1391(e) because Defendants, in their official capacities, reside or conduct official duties within this district and because, on information and belief, a substantial portion of the decisions and omissions giving rise to Plaintiff's claims occurred in this district.

12. This Court has personal jurisdiction over Defendants pursuant to 28 U.S.C. § 1391(e)(1), as they are officers of the United States acting in their official capacities and a substantial part of the events or omissions giving rise to the claim occurred in this judicial district.

## FACTUAL ALLEGATIONS

13. In a memorandum dated May 11, 2007, the Department of Defense (DoD) Health Affairs issued a policy titled "Policy on Bariatric Surgical Procedures for Active-Duty Service Members" [See exhibit 1]. In this memorandum, the DoD declared a blanket disqualification for military service based on any history of bariatric surgery. The policy characterizes bariatric procedures as inducing permanent anatomical changes that require strict dietary compliance, thereby potentially interfering with operational deployability. The memorandum also states that active-duty members undergoing bariatric surgery without Military Health System authorization should be processed for separation.

14. Accordingly, individuals who undergo such surgery, whether while on active duty or prior to enlistment, are deemed permanently disqualified. This categorical exclusion applies

irrespective of post-surgical health status or medical recovery and remains a foundational basis

for the Air Force's denial of enlistment waivers, such as in the case of Plaintiff Jacob Guthrie.

15. The United States Air Force codified the bariatric surgery exclusion through implementation

guidance aligned with DoD instruction (DoDI) 6130.03, Volume 1. As of its most recent

update (Change 5), dated May 28, 2024, DoDI 6130.03 V1, Section 6 (Disqualifying

Conditions), categorically disqualifies any applicant with a "history of bariatric surgery of any

type" from appointment, enlistment or induction. The exclusion operates irrespective of

scientific advances since 2007 to date, clinical recovery, current health metrics, physical or

medical fitness. The Air Force applies this provision without individualized assessment or

waiver consideration for otherwise fully qualified applicants like Jacob Guthrie.

16. On 19 December 2022, Jacob Guthrie underwent laparoscopic sleeve gastrectomy under the

supervision of board-certified surgeons. The operation was successful, and he has achieved a

sustained, stable weight, excellent nutritional status confirmed by repeated laboratory panels,

and meets the physical performance benchmarks for DoD accession standards.

17. In early 2024, Jacob Guthrie visited a United States Air Force recruiting station to pursue his

long-held aspiration of military service. During this enlistment and accession process, he

successfully passed all Air Force's requirements and qualifications, including aptitude

screening, moral background checks, and fitness metrics. As such, the recruiter presented Mr.

Guthrie with a list of available Air Force job specialties for which he was qualified.

18. However, when he truthfully disclosed his history of laparoscopic sleeve gastrectomy—a

procedure from which he had fully recovered, with supporting medical documentation

evidencing optimal health and deployability—he was immediately disqualified. The recruiter

explicitly stated that the disqualification was automatic and dictated solely by Department of

Defense policy, specifically DoDI 6130.03-V1, § 5.9(e) as directed by the DoD memorandum

dated May 11, 2007, the Department of Defense (DoD) Health Affairs "Policy on Bariatric

Surgical Procedures for Active-Duty Service Members" which bars accession for any

individual with a history of bariatric surgery. No individualized review, medical assessment,

or waiver consideration was offered at that time, underscoring that Plaintiff's exclusion was

the result of a rigid and facially discriminatory policy rather than any legitimate assessment of

his current fitness or readiness to serve.

19. Although bariatric surgery is listed as a disqualifying condition under DoDI 6130.03-V1, §

5.9(e), which bars accession for any applicant with a history of such procedures regardless of

current medical status, the Department of the Air Force Instruction (DAFI) 36-3211 § 3.3

establishes an avenue for medical waivers.  Plaintiff Jacob Guthrie's waiver requests—

submitted three times with comprehensive medical documentation attesting to his full physical

recovery, nutritional stability, and superior fitness—were denied without any substantive

consideration based solely on the DoDI 6130.03-V1, § 5.9(e), which bars accession for any

individual with a history of bariatric surgery facially. *(See exhibit 2).*

20. In fact, the Air Force never conducted a physical evaluation, clinical interview, or independent

medical assessment. Instead, Plaintiff was summarily disqualified solely on the basis of the

categorical policy, rendering the waiver process a legal fiction which clearly reflects facial

discrimination and procedural injustice in direct contravention of the waiver process that

Defendants purport to provide.

21. Guthrie has been independently evaluated by two civilian bariatric experts, all of whom

concluded that he presents no medical risk, is fully deployable, and demonstrates resilience

consistent with active-duty performance standards.

22. Guthrie has been categorically barred from enlistment solely due to his surgical history,

without consideration of his individualized medical documentation or expert endorsements.

This exclusion occurred under the current application of DoDI 6130.03, which fails to distinguish between medically resolved surgical outcomes and chronic, disqualifying conditions.

23. Guthrie's condition meets every operational standard under DoDI 6130.03 § 1.2(c), which requires applicants to be free of medical conditions likely to require excessive duty time loss, geographical limitation, or separation.

**Current Scientific Data, Institutional Endorsement and the Continued Facially Discriminatory Accession and Retention Ban.**

24. While the DoD's categorical bar policy has been in place since 2007 to enlist individuals with a history of bariatric surgery, the scientific advancements and data supports a long standing and overdue policy change. Since the ban, DoD & Air Force has simultaneously and continuously endorsed the procedure's medical efficacy and benefits for service members dependents and retirees, in contradiction with their own off dated policies.

25. In *"Resectional gastric bypass outcomes in active-duty soldiers: a retrospective review"* Surgery for Obesity and Related Diseases (Vol. 5, Issue 6), military medical researchers led by Dr. Lionel R. Brounts analyzed 33 active-duty service members who underwent open gastric bypass. The study reported a mean preoperative BMI of 40.6 kg/m² and a mean postoperative BMI of 25.6 kg/m², signifying a dramatic reduction in obesity levels. Notably, based on the Bariatric Analysis and Reporting Outcome System (BAROS), 44% of patients achieved "very good" results, 33% "good," and 7% "excellent," with zero treatment failures. Further, 24 out of 27 patients (89%) retained or attained deployable status post-surgery, and five individuals previously deemed nonpromotable due to weight were reclassified as promotable. **The**

authors concluded, **"bariatric surgery improves the quality of life of active-duty service members who have failed nonoperative means of obesity control,"** and affirmed that <u>"most service members... are able to successfully deploy to war zones without adverse effects on their military performance" (Brounts et al., 2009).</u> This is a peer-reviewed medical research and findings approved by certified physicians who are also Military Surgeons and the data decisively rebuts the premise underlying the categorical accession bar against individuals with a history of bariatric surgery.

26. In 2009, the DoD approved an agreement that allowed Air Force military surgeons to perform bariatric surgeries. MAJ (Dr. Richard Peterson, chief of the Wilford Hall Bariatric Clinic in a 2009 publication: "The agreement allows Wilford Hall providers to perform surgeries at the Nix Hospital using Nix equipment and support staff, and the agreement was modified to include bariatric surgeries in December 2008. In December, Wilford Hall doctors performed six bariatric surgeries at the Nix Hospital. "The Nix Hospital is a Center of Excellence for bariatric surgery," said Maj. (Dr.) Richard Peterson, the Wilford Hall Bariatric Clinic chief. "They meet requirements established by the American Society for Metabolic and Bariatric Surgery that sets certain benchmarks such as high volume of surgeries, a dedicated bariatric unit and specialized equipment, such as large-sized CT scans and beds." Dr. Peterson said. "Although surgery should be a last resort, **it can significantly improve an individual's overall health and quality of life**." *See Agreement expands beneficiaries' access to bariatric surgery Published Jan. 9, 2009, By Sue Campbell 59th Medical Wing Public Affairs.*

27. In a publication dated December 19, 2012 titled "Worlds Apart: the United States Military Bariatric Surgeons Excel in Vastly Different Arenas," LTC (P) Dr. Robert B. Lim and MAJ (P) Dr. William V. Rice, both military bariatric surgeons and professors affiliated with the Uniformed Services University of Health Sciences and William Beaumont Army Medical

Center respectively, offer a comprehensive overview of the U.S. military's robust engagement in bariatric surgery. The doctors criticized the current policy ban as not updated to reflect current scientific data. Dr. Robert B. Lim affirmed that "performing bariatric surgery on active-duty soldiers is against the DOD policy. The surgery can only be performed on dependents, retirees from the military, and veteran beneficiaries. With the growth of metabolic surgery, though, and the possible expansion of its use with lower BMIs, **perhaps this policy should be re-evaluated. A service member can meet military height and weight standards yet still have a BMI over 30kg/m2. If the service member has diabetes, he or she would likely be better served with a RYGB or possibly a sleeve gastrectomy"**.

28. Military and Civilian surgeons, despite challenges such as deployments and institutional constraints, consistently uphold the highest standards in bariatric care. *Citing data from the American College of Surgeons National Surgical Quality Improvement Program (NSQIP)*, reveal that U.S. military surgeons perform between 600 to 1,000 bariatric procedures annually across more than 14 medical centers, with sleeve gastrectomy and Roux-en-Y gastric bypass (RYGB) being the most common procedures.

29. Further, Dr. Walter Pories, Dr. Alan Whitgrove, and Dr. Robin Blackstone, who not only advanced bariatric surgery but also held significant ranks within the military had emphasized that despite lacking standardized DoD-wide bariatric protocols, military medical treatment facilities (MTFs) emulate American Society for Metabolic and Bariatric Surgery (ASMBS) and American College of Surgeons (ACS) standards, integrating multidisciplinary evaluations and performing advanced laparoscopic and robotic procedures. In "Worlds Apart: the United States Military Bariatric Surgeons Excel in Vastly Different Arenas" LTC Yong Choi, MD, Chief of Bariatrics at Dwight D. Eisenhower Medical Center in Fort Gordon, Georgia. concluded that "Even within our [MWG] group, there is not a consensus about how we should

resolve this issue….this may be a more significant problem in the near future as it is estimated that one out of every four recruits is ineligible to enter active duty because they do not meet the weight standards. According to the former Chairman of the Joint Chiefs of Staff, Air Force General (ret) Richard B. Myers, this is likely to also impact national security".

30. The scientific data and advances on bariatric surgery exposes a fundamental policy contradiction—while active duty performance data confirm successful surgical outcomes, including improved deployability and health, military policy continues to bar these interventions for currently serving members, an inconsistency warranting judicial scrutiny.

31. In July 2020, the Department of Veterans Affairs and the Department of Defense jointly issued the VA/DoD Clinical Practice Guideline for the Management of Adult Overweight and Obesity to provide an evidence-based framework for the evaluation and treatment of obesity among adult beneficiaries, including active-duty service members. This guideline affirms that "bariatric surgery is a safe and effective treatment option" for individuals with clinically severe obesity—defined as a body mass index (BMI) of 40 or greater, or 35 or greater with obesity-related comorbidities—particularly when prior lifestyle and pharmacological interventions have been unsuccessful (VA/DoD CPG, 2020, p. 31).

32. The guideline explicitly outlines the profound health benefits of bariatric intervention, noting that "bariatric surgery is associated with significant, sustained weight loss and improvement or resolution of obesity-related comorbidities including type 2 diabetes mellitus, hypertension, and obstructive sleep apnea" (id.). It further emphasizes that "in appropriately selected patients, bariatric surgery improves health outcomes and quality of life" and should not be categorically withheld due to factors such as age or the failure of previous weight loss attempts (VA/DoD CPG, 2020, p. 36). In short, the VA recognizes bariatric surgery as a legitimate, clinically endorsed component of long-term weight management in the military health system.

And such endorsement stands in sharp contrast to the DoD & Air Force's policy-based automatic disqualification of enlistment applicants with a history of such surgery, which in medical terms exposes the irrationality and medical inconsistency of its current accession standards.

33. In a critical analysis published by Military.com on September 4, 2024, titled **_"Military Obesity Policies Need to Catch Up with Science,"_** the DoD was called out for maintaining antiquated and inconsistent obesity-related accession and retention policies that fail to incorporate modern medical science and evidence-based treatment protocols. According to research cited by the American Security Project, the military spends approximately $1.24 billion annually to address obesity within its ranks yet continues to disqualify potential recruits and separate active-duty service members based solely on outdated metrics and inflexible standards. In 2023 alone, obesity was the leading cause for disqualification of an estimated 52,000 otherwise qualified recruits, and from 2018 to 2022, it led to the involuntary separation of approximately 101,000 service members for weight-related causes.

34. Despite this growing crisis, the Department of Defense has been slow to adopt and authorize proven clinical interventions such as FDA-approved anti-obesity medications (e.g., GLP-1 agonists like Wegovy and Zepbound), intensive behavioral therapy, and metabolic or bariatric surgery—interventions recognized as clinically effective by the American Medical Association and the Obesity Action Coalition. Dr. Richele Corrado, Director of Walter Reed's Internal Medicine Comprehensive Weight Management Program, openly criticized the current regulatory guidance, stating: "There are service-specific policies that are old and outdated and confusing, that talk about how you can't necessarily treat people with medications for anorexic purposes.… A lot of people are fearful of the repercussions of treating people" (Military.com, Sept. 4, 2024).

35. To this end, current scientific data, research and publications underscores a fundamental contradiction: while military medical experts acknowledge the severe impact of untreated obesity on readiness and health, the institutional response remains punitive rather than therapeutic. Tracy Zvenyach, policy director at the Obesity Action Coalition, emphasized that, *"Qualified and trained health care professionals should be offering evidence-based interventions and treatments... across the spectrum of nutrition counseling, intensive behavioral therapies, FDA-approved medications, or metabolic and bariatric surgery."* Nevertheless, less than 0.44% of eligible service members currently receive access to GLP-1 weight loss medications, revealing a vast gap between medical knowledge and policy implementation.

36. Ultimately, the report calls for the DoD to formally classify obesity as a medical disease—a shift that would not only permit appropriate treatment under the military health system but would also protect service members from discriminatory personnel actions. As the report concludes, this reframing is essential not just to improve individual health outcomes but also **to protect force readiness and reduce attrition during a period of declining recruitment and retention** (Military.com, 2024). The failure to adopt such changes sustains a punitive regime where even demonstrably successful interventions, such as bariatric surgery, are facially disqualifying regardless of clinical recovery, directly undermining rational policy objectives and contradicting the military's own stated mission readiness priorities.

37. The researchers suggested that appearance-based standards be replaced with health standards and weight management should be classified as a medical concern, paving the way for treatment in the military medical system. Not only would this improve troops' health, protecting them from developing chronic obesity-related diseases such as diabetes, high blood pressure and liver disease, it would help preserve readiness and could save the Defense

Department not only the billions it is spending on medical care but up to $99 million per year in lost productivity, according to the group. "These conditions lead to prolonged time spent out of service, reduced ability to meet the physical demands of service, and rising attrition rates across the services. With both recruitment and retention on the decline, maintaining fit and capable personnel is critical to ensure a force structure sufficient to combat rising global threats," the researchers wrote.

38. Dr. Richele Corrado, director of Walter Reed's Internal Medicine Comprehensive Weight Management Program states that "A lot of people are fearful of the repercussions of treating people." Dr. Corrado has worked to convince the Defense Health Agency to support treatment for service members either at the weight management clinic at Walter Reed or to establish similar clinics to tackle the problem across the force *(id)*.

39. Dr. Tracy Zvenyach, director of policy strategy and alliances at the Obesity Action Coalition has concluded that "Society needs to catch up with the science…qualified and trained health care professionals should be offering evidence-based interventions and treatments, and that can look like anything across the spectrum of nutrition counseling, intensive behavioral therapies, FDA-approved medications, or metabolic and bariatric surgery". *(id)*.

40. In January 2010, the Air Force publicized in their official site the case of a retired Master Sergeant, whose life was dramatically improved through its bariatric surgery program at Wilford Hall Medical Center. The retired Master Sergeant reduced his weight, overcoming hypertension, high cholesterol and impending Type II diabetes. Maj. (Dr.) Richard Peterson, the WHMC chief of bariatric and advanced laparoscopic surgery stated "Mike (referring to the Master Sergeant) …**he's one of our best recruiting assets…**" *See Surgery, lifestyle changes charge man's massive weight loss By Sean Bowlin, 12th Flying Training Wing Public Affairs / Published January 13, 2010.*

41. Stuart Piltch, president of Risk Strategies Consulting and a specialist in insurance and health care, said he understands why the military has been slow to embrace change "I think it's education first, but also changing these policies that make people think that they can't take them". The change would require the Defense Department and the services to define obesity as a disease so it can be treated, according to the report. (id). He concludes that without a written classification and its associated protection, service members face bias and discrimination for 'exceeding weight standards,' becoming ineligible for promotion, educational privileges, deployment or disability compensation.

42. On January 14, 2025, Houston VA launched a new bariatric program offering minimally invasive gastric sleeve surgery to eligible veterans, such as Marine Corps Veteran Byron Potier. After struggling with nearly 300 pounds, prediabetes, and lethargy, Potier underwent surgery underwent under the care of Dr. Amelia Lucisano, a bariatric surgeon and assistant professor at Baylor College of Medicine. Following the procedure in December 2024, Potier began feeling much healthier. Dr. Lucisano emphasized the transformative effects of the surgery, explaining that "Veterans are often very motivated, tough and determined, very important qualities in candidates for this kind of a surgery. It's so rewarding to watch them regain their health and their quality of life after surgery" *See VA.gov/Houston-healthcare* .

43. Bariatric surgery, including laparoscopic sleeve gastrectomy (LSG), has undergone significant evolution since its clinical inception, and is now recognized by the American Society for Metabolic and Bariatric Surgery (ASMBS) and other leading authorities as a safe, effective, and durable treatment for obesity and related metabolic disorders.

44. Post-operative outcomes from LSG demonstrate sustained weight loss, resolution of type 2 diabetes, hypertension, and obstructive sleep apnea, with negligible long-term complications for medically compliant patients. Peer-reviewed studies published in JAMA Surgery and

Obesity Surgery confirm a low rate of surgical revision or morbidity beyond 12 months post-operation, particularly for patients like Mr. Guthrie who demonstrate normal laboratory profiles, dietary compliance, and physical conditioning.

45. The Department of Defense's Military Health System and TRICARE Clinical Practice Guidelines similarly acknowledge the effectiveness and low complication profile of modern bariatric procedures, particularly when follow-up care confirms full nutritional repletion and metabolic stability.

46. Dr. Tamara Worlton is a board-certified surgeon and former Lieutenant Commander in the United States Navy that was assigned at Walter Reed National Military Medical Center in Bethesda, MD where she is Division Chief of Advanced Laparoscopic Surgery. She is also actively involved in medical education and is an Assistant Professor of Surgery at Uniformed Services University of Health Sciences. Dr. Worlton has emphasized in her professional publications and military medical education roles that bariatric surgery, including sleeve gastrectomy, is not inherently disqualifying for military service when individualized assessments indicate resolution of comorbidities and fitness for duty. Dr. Worlton has explicitly called for reform of categorical disqualification policies in favor of evidence-based evaluations, citing military retention of active-duty personnel post-surgery as precedent. *See Bariatric Surgery & the Military, May 23, 2021, International Bariatric Club University of Oxford.*

47. Bariatric surgery, particularly laparoscopic sleeve gastrectomy (LSG), has transformed over the **past two decades** into a low-risk, evidence-based intervention for the long-term management of morbid obesity. Multiple large-scale studies, including the National Institutes of Health (NIH)-funded Longitudinal Assessment of Bariatric Surgery (LABS) and research published in The New England Journal of Medicine, establish that modern LSG procedures

yield sustained weight loss, metabolic improvement, and normalization of cardiovascular

markers with a complication rate comparable to or lower than other commonly accepted

surgeries such as appendectomy or cholecystectomy. *See Courcoulas et al., "Five-Year*

*Outcomes of Gastric Bypass in Adolescents as Compared with Adults," N Engl J Med, 2021;*

*384:2573–2585.*

48. A consensus statement from the American Society for Metabolic and Bariatric Surgery

(ASMBS), updated in 2022, affirms that individuals who maintain nutritional sufficiency,

stable weight, and physical capacity post-LSG are fully capable of high-demand occupational

roles, including those in emergency response and law enforcement—sectors with operational

analogs to military service. *See ASMBS, "Updated Position Statement on Eligibility for*

*Metabolic and Bariatric Surgery," 2022*

49. Likewise, a series of qualified doctors, assigned to the Defense Institutes of Health (DIH), has

reported that patients with successful LSG outcomes show no higher attrition, deployment, or

morbidity rates when matched for age and BMI with non-surgical peers. This peer-reviewed

data supports the inclusion of post-bariatric candidates where documentation shows full

recovery. *See Aderinto N, Olatunji G, Kokori E, Olaniyi P, Isarinade T, Yusuf IA. Recent*

*advances in bariatric surgery: a narrative review of weight loss procedures. Ann Med Surg*

*(Lond). 2023 Nov 1;85(12):6091-6104. doi: 10.1097/MS9.0000000000001472. PMID:*

*38098582; PMCID: PMC10718334.*

50. Studies show bariatric surgery may reduce a patient's risk of premature death by 30-50%.

**Bariatric surgery is as safe or safer than some of the most commonly performed**

**surgeries** in America including gallbladder surgery, appendectomy and knee replacement.

The risk of death associated with bariatric surgery is about 0.1% and the overall likelihood of

major complications is about 4%. *See Metabolic & Bariatric Surgery the American Society*

*For Metabolic & Bariatric Surgery 2021.*

## DoD's Policy on Bariatric Surgical Procedures for Active-Duty Service Members and DoDI 6130.03 violates equal protection, due process and APA.

51. Plaintiff Jacob Guthrie underwent laparoscopic sleeve gastrectomy in 2022 under the supervision of board-certified surgeons. He has achieved a sustained, stable weight, excellent nutritional status confirmed by repeated laboratory panels, and exceeds physical performance benchmarks for Air Force accession standards.

52. Guthrie has been independently evaluated by two civilian bariatric experts, all of whom concluded that he presents no medical risk, is fully deployable, and demonstrates resilience consistent with active-duty performance standards.

53. Despite this, Guthrie has been categorically barred from enlistment solely due to his surgical history, without consideration of his individualized medical documentation or expert endorsements. This exclusion occurred under the current application of DoDI 6130.03, which fails to distinguish between medically resolved surgical outcomes and chronic, disqualifying conditions.

54. Guthrie's condition meets every operational standard under DoDI 6130.03 § 1.2(c), which requires applicants to be free of medical conditions likely to require excessive duty time loss, geographical limitation, or separation.

55. Air Force Instruction DAFI 36-3211 § 3.3 provides the Secretary discretion to approve waivers for medically disqualifying conditions when evidence supports readiness and fitness. In Guthrie's case, the waiver was denied without review or assessment, illustrating the arbitrary nature of the current policy.

56. The failure to evaluate Guthrie individually violates the core principles of administrative due process, medical ethics, and Air Force accession policies which require individualized assessments where practicable. Blanket rejections contradict decades of military medical evolution and expert guidance from DoD-affiliated clinicians.

57. Absent judicial relief, highly qualified candidates like Mr. Guthrie will continue to face unconstitutional, scientifically unsupported exclusion from military service, depriving the nation of dedicated, medically fit individuals.

58. Bariatric surgery, including laparoscopic sleeve gastrectomy (LSG), has undergone significant evolution since its clinical inception, and is now recognized by the American Society for Metabolic and Bariatric Surgery (ASMBS) and other leading authorities as a safe, effective, and durable treatment for obesity and related metabolic disorders.

59. Post-operative outcomes from LSG demonstrate sustained weight loss, resolution of type 2 diabetes, hypertension, and obstructive sleep apnea, with negligible long-term complications for medically compliant patients. Peer-reviewed studies published in JAMA Surgery and Obesity Surgery confirm a low rate of surgical revision or morbidity beyond 12 months post-operation, particularly for patients like Mr. Guthrie who demonstrate normal laboratory profiles, dietary compliance, and physical conditioning.

60. The Department of Defense's Military Health System and TRICARE Clinical Practice Guidelines similarly acknowledge the effectiveness and low complication profile of modern bariatric procedures, particularly when follow-up care confirms full nutritional repletion and metabolic stability.

61. Consistent with this view, the Department of Defense has maintained since 2007 a policy explicitly recognizing that a history of bariatric surgery is a bar to military service and may be grounds for separation if performed while on active duty. *See, e.g., DoD, "Policy on Bariatric*

*Surgical Procedures for Active-Duty Service Members" (2007),* which states that such

procedures cause permanent changes to the digestive system and potentially interfere with

deployment. However, the same policy acknowledges that this restriction does not reflect

individual outcomes or advancements in surgical science.

62. Guthrie achieved a sustained, stable weight, excellent nutritional status confirmed by repeated

laboratory panels, and meets physical performance benchmarks for Air Force accession

standards.

63. Guthrie has been independently evaluated by two civilian bariatric experts, all of whom

concluded that he presents no medical risk, is fully deployable, and demonstrates resilience

consistent with active-duty performance standards.

64. Despite this, Guthrie has been categorically barred from enlistment solely due to his surgical

history, without consideration of his individualized medical documentation or expert

endorsements. This exclusion occurred under the current application of DoDI 6130.03, which

fails to distinguish between medically resolved surgical outcomes and chronic, disqualifying

conditions.

65. Guthrie's condition meets every operational standard under DoDI 6130.03 § 1.2(c), which

requires applicants to be free of medical conditions likely to require excessive duty time loss,

geographical limitation, or separation. Current science and military and civilian bariatric

surgeons and medical experts have confirmed in published analyses and military health

*symposia* that patients in Guthrie's category face no such risks and are suitable for full military

duties.

66. Air Force Instruction DAFI 36-3211 § 3.3 provides the Secretary discretion to approve

waivers for medically disqualifying conditions when evidence supports readiness and fitness.

In Guthrie's case, the waiver was denied without review or assessment, illustrating the

arbitrary nature of the current policy.

67. The failure to evaluate Guthrie individually violates the core principles of administrative due process, medical ethics, and Air Force accession policies which require individualized assessments where practicable. Blanket rejections contradict decades of military medical evolution and expert guidance from DoD-affiliated clinicians.

68. Guthrie's medical records document stable BMI within the accession range, no post-surgical complications, and high physical fitness scores. He was deemed fully deployable by independent and military-affiliated physicians.

69. Despite these findings, Guthrie's application was rejected solely due to his surgical history under DoDI 6130.03, without individualized assessment or acknowledgment of his full medical recovery.

70. According to DoDI 6130.03 § 6(5), disqualifying conditions states that "History of bariatric surgery of any type" are disqualified to enlist and serve. Note that this has a distinctly discriminatory effect because operates without any allowance for individualized assessment or current medical fitness, automatically disqualifying applicants solely due to their bariatric surgical history.

71. Air Force Instruction DAFI 36-3211 § 3.3 authorizes waiver consideration for disqualifying conditions where evidence supports operational readiness. Guthrie submitted such documentation, yet the Air Force denied the waiver without explanation or substantive review, a violation of procedural and substantive due process.

72. Recently, in **Wilkins v. Austin, 2022 WL 14673361 (E.D. Va. Oct. 25, 2022),** the U.S. District Court rejected categorical accession bans imposed on servicemembers with HIV and emphasized the need for individualized medical evaluations over blanket disqualifications. The court concluded that DoD policies must comport with current medical science and

constitutional guarantees against arbitrary exclusion, particularly when policies ignore objective readiness data.

73. The Defendants' reliance on a categorical exclusion disregards decades of clinical evidence, leading military medical opinion, and published policy critiques. Their failure to consider Guthrie's case individually violates established norms of administrative fairness, medical ethics, and accession policy discretion.

74. Without intervention, scientifically fit and patriotic individuals like Mr. Guthrie will remain unjustly excluded from military service, undermining national defense interests and perpetuating outdated, medically discredited exclusions.

**CLAIMS FOR RELIEF**

**CLAIM I**

**Violation of Equal Protection Under the Fifth Amendment's Due Process Clause**
*(Facially and As-Applied) Against All Defendants)*

75. All prior paragraphs are incorporated as if fully set forth here.

76. The Fifth Amendment to the United States Constitution provides that no person shall be deprived of life, liberty, or property without due process of law. The Due Process Clause includes within it a prohibition against the denial of equal protection by the federal government, its agencies, its officials, or its employees.

77. Defendants' policies and practices impermissibly discriminate, both facially and as applied, against individuals with a history of bariatric surgery by categorically barring them from enlistment based solely on their surgical history.

78. Defendants routinely permit similarly situated individuals with other chronic but stable and manageable medical conditions, including orthopedic repairs, cardiac stents, and controlled endocrine disorders, to be assessed on a case-by-case basis for enlistment.

79. Defendants refused to enlist Plaintiff Guthrie based solely on his history of laparoscopic sleeve gastrectomy, despite undisputed clinical documentation showing full physical recovery, nutritional stability, and superior physical readiness.

80. Governmental discrimination against individuals with prior bariatric surgery warrants heightened scrutiny where the exclusion lacks empirical support, constitutes overbreadth, and perpetuates stigmatic harm without medical justification.

81. Individuals who have undergone bariatric surgery and achieved post-operative stabilization are recognized by the ASMBS and NIH as capable of leading fully active, deployable lives with no residual surgical limitations.

82. Such individuals represent a discrete minority and have limited political avenues to correct military policy, absent judicial intervention.

83. Plaintiff Guthrie's medical status and capability to perform all military duties demonstrates no rational relationship between his surgical history and any legitimate governmental interest.

84. Defendants' categorical exclusion deprives Plaintiff of equal protection under the law, causing direct occupational, financial, and dignitary harm.

85. The policy fails under both rational basis review and heightened scrutiny, as it is not narrowly tailored to serve any compelling or important governmental interest and is contradicted by prevailing medical evidence.

### **CLAIM II**

**Violation of the Administrative Procedure Act
as to DoDI 6485.01 and DoDI 6130.03 against Defendants**

86. Plaintiff has no adequate or available administrative remedy; alternatively, seeking one would be futile.

87. Plaintiff Guthrie's enlistment denial was based on DoDI 6130.03, which

categorically lists bariatric surgery as disqualifying, without accounting for individualized medical fitness.

88. DoDI 6130.03 Vol. 1, § 5.9(e) precludes applicants with a history of bariatric surgery, regardless of current health status, which is arbitrary and capricious in light of scientific literature and clinical practice standards.

89. The instruction fails to consider evidence-based guidance from the ASMBS and NIH, as well as individualized waiver assessments permitted under DAFI 36-3211 § 3.3.

90. In Wilkins v. Austin, No. 1:18-cv-01565 (E.D. Va. 2022), the court struck down a similarly categorical exclusion against individuals with HIV, emphasizing the necessity for individualized medical evaluation based on contemporary science.

91. Defendant Austin had the opportunity to revise DoDI 6130.03 to reflect such individualized considerations post-Wilkins but failed to do so regarding bariatric surgery.

92. As applied, DoDI 6130.03 is arbitrary, capricious, contrary to law, and unsupported by substantial evidence, in violation of 5 U.S.C. § 706(2)(A).

## CLAIM III

### Violation of Administrative Procedure Act as to Air Force Implementation Under DAFI 36-3211

93. All prior paragraphs are incorporated as if fully set forth herein.

94. Plaintiff has no adequate or available administrative remedy; alternatively, seeking one would be futile.

95. DAFI 36-3211 § 3.3 allows for waivers to be granted based on medical documentation of fitness, yet this process was not afforded to Plaintiff in good faith.

96. Defendant Robinson denied Plaintiff's waiver without transparent criteria or

acknowledgment of the extensive medical support for Guthrie's readiness and
deployability.

97. Defendant Robinson's decision reflects reliance on DoDI 6130.03 without
conducting a proper individualized medical review, rendering the denial arbitrary
and capricious.

98. The Air Force's implementation of a categorical exclusion for individuals post-
bariatric surgery contradicts current scientific understanding, violates procedural
fairness, and disregards controlling judicial precedent.

99. Through the actions and omissions described above, Defendants violated the
APA, 5 U.S.C. § 706(2)(A).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Issue a judgment, pursuant to 28 U.S.C. § 2201, declaring the accession regulations barring
enlistment of individuals with a history of bariatric surgery unconstitutional on their face and
as applied to Plaintiff;

B. Issue a judgment, pursuant to 28 U.S.C. § 2201, declaring that DoDI 6130.03 and related
implementing policies are arbitrary, capricious, and unlawful under the APA as applied to
individuals who have fully recovered from bariatric surgery;

C. Enjoin Defendants, their agents, employees, representatives, successors, and any other
person or entity subject to their control or acting directly or indirectly in concert with them
from enforcing any categorical accession bar based on history of bariatric surgery without an
individualized medical fitness evaluation;

D. Order Defendants to reevaluate Plaintiff Guthrie's enlistment application and waiver request
under DAFI 36-3211 § 3.3 without regard to his history of bariatric surgery, taking into

account current medical evidence of full recovery and physical readiness;

E. Award Plaintiff costs, expenses, and reasonable attorneys' fees pursuant to 28 U.S.C. § 2412 and any other applicable law; and

F. Grant such other and further relief as the Court deems just and proper under 28 U.S.C. § 2202.

Respectfully Submitted,

Michael C. Fallings, Esq.
Managing Partner
3420 Executive Center Drive, Suite 160
Austin, TX 78731
Office: (512) 225-2822
Facsimile: (512) 225-2801
Email: mfallings@fedattorney.com


Sean C. Timmons, Esq., LL.M.
Managing Partner, Tully Rinckey PLLC
Texas Bar No.: 24067908
New York State Bar No.: 5470190
Admitted to Practice in all Texas Federal Courts
18722 University Blvd., Ste. 235
Sugar Land, TX 77479
(832) 240-3273 Phone
(281) 387-3411 Cell
(832) 241-5998 FAX
Stimmons@tullylegal.com
Attorney for Plaintiff


Michelle Alvarado, Esq.
Associate, Tully Rinckey PLLC
5488 Sheridan Drive Suite 500

25

Buffalo NY 14221
Tel: (716) 272-3015
Fax: (716) 462-4455
msalermo@tullylegal.com