**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| JACOB GUTHRIE, <br><br> Plaintiff, <br><br> v. <br><br> PETE HEGSETH, *et al.*, <br> *Secretary of Defense* <br><br> Defendants. | Case No. 25-cv-2179-MJS |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jacob Guthrie was all set to join the U.S. Air Force. But when he disclosed his prior weight-loss surgery, he was barred from enlistment under a Department of Defense ("DoD") policy that disqualifies from military service anyone with a history of bariatric surgery. Suing the Secretary of Defense and other military leaders in their official capacities, Guthrie challenges that policy (and the surrounding decision-making as to his disqualification) as a violation of his Fifth Amendment equal protection rights and the Administrative Procedure Act ("APA"). Defendants move to dismiss in part, seeking dismissal of the constitutional claim only. (*See* ECF No. 19.) Agreeing that Guthrie fails to state a cognizable equal protection claim because he fails to plausibly allege the absence of any rational basis for the challenged policy, the Court **GRANTS** the motion.

## BACKGROUND

The Court derives the following facts, accepted as true for present purposes, from the operative complaint. *Joyner v. Morrison & Foerster, LLP*, 140 F.4th 523, 530 (D.C. Cir. 2025).

DoD applies certain medical standards to applicants for military service and enlisted service members. Relevant here, one of those standards categorically disqualifies individuals from

military enlistment if they have undergone bariatric surgery.[1] *See* Dep't of Def. Instruction ("DoDI") 6130.03, Vol. 1, *Medical Standards for Military Service: Appointment, Enlistment, or Induction*, § 6.12(b)(5) at 25 (Feb. 3, 2026), https://perma.cc/4HM6-6JCK. As a branch of the military, the U.S. Air Force adheres to and implements that policy and thus bars applicants with a medical history of bariatric surgery. *See* Dep't of the Air Force Manual ("DAFMAN") 48-123, *Medical Examination and Standards*, § 3.2 at 25 (Dec. 8, 2020), https://perma.cc/5MQY-4QXE. According to Guthrie's complaint, DoD's rationale behind the policy is that bariatric procedures cause "permanent anatomical changes that require strict dietary compliance, thereby potentially interfering with operational deployability." (*See* ECF No. 2 ("Am. Compl.") ¶¶ 13, 61.)

In 2022, Guthrie underwent a successful laparoscopic sleeve gastrectomy—a form of bariatric surgery. (*Id.* ¶ 16.) About a year later, he attempted to join the Air Force. (*Id.* ¶¶ 16–17.) Guthrie passed the required screening, "including aptitude screening, moral background checks, and fitness metrics" (*id.* ¶ 17), but when he disclosed his history of bariatric surgery, the Air Force recruiter advised that he was disqualified from service by the policy. (*Id.* ¶ 18.) Undeterred, Guthrie sought medical waivers—three times over—but each time, his waiver was denied. (*Id.* ¶¶ 19, 55.) According to Guthrie, the only thing preventing him from enlisting is the DoD policy's categorical bar on military recruits who have undergone bariatric surgery. (*See id.* ¶ 53 ("Guthrie has been categorically barred from enlistment solely due to his surgical history[.]"); *id.* ¶ 64 (same).)

So, Guthrie filed this lawsuit against the Secretary of Defense, the Secretary of the Air Force, and the Air Force's Commander of Air Education and Training Command. Guthrie alleges that: (1) the policy violates his equal protection rights guaranteed by the Fifth Amendment's Due

---

[1] In simple terms, "[g]astric bypass and other types of weight-loss surgery—also called bariatric or metabolic surgery—involve making changes to [the] digestive system to help [a person] lose weight." *Bariatric surgery*, Mayo Clinic (July 5, 2024), https://perma.cc/FAP2-Z8DU.

Process Clause (Count I); (2) the policy runs afoul of the APA because it is arbitrary, capricious, contrary to law, and unsupported by substantial evidence (Count II); and (3) the Air Force's handling of Guthrie's requested medical waivers from the policy was arbitrary, capricious, and otherwise improper under the APA (Count III). (Am. Compl. ¶¶ 75–99.)

Invoking Rule 12(b)(6), Defendants now move to dismiss Guthrie's equal protection claim in Count I for failure to state a claim. (ECF No. 19 ("Mot.").) The matter is fully briefed and ripe for decision. (*See* ECF No. 20 ("Opp'n"); ECF No. 26 ("Reply").)

## LEGAL STANDARD

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), courts ask whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[F]acial plausibility" means the complaint's facts must allow for a "reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Under Rule 12(b)(6), courts construe the complaint "in favor of the plaintiff" and afford the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Hettinga v. United States*, 677 F.3d 471, 476 (D.C. Cir. 2012) (quoting *Schuler v. United States,* 617 F.2d 605, 608 (D.C. Cir. 1979)). But courts need not accept as true "legal conclusions couched as factual allegations." *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016). Further, mere "recitals of the [legal] elements of a cause of action" cannot "suffice" to forestall a motion to dismiss. *L. Xia v. Tillerson*, 865 F.3d 643, 650 (D.C. Cir. 2017) (quoting *Iqbal*, 556 U.S. at 678).

## ANALYSIS

Broadly speaking, "[t]he Fifth Amendment's guarantee of equal protection requires state actors to treat similarly situated persons alike." *XP Vehicles, Inc. v. Dep't of Energy*, 118 F. Supp.

3

3d 38, 75 (D.D.C. 2015) (citation and quotation marks omitted).[2] "The first step in analyzing" a Fifth Amendment equal protection claim "is to determine the proper level of scrutiny." *Hedgepeth ex rel. Hedgepeth v. Wash. Metro. Area Transit Auth.*, 386 F.3d 1148, 1153 (D.C. Cir. 2004). Governmental classifications that implicate a suspect or quasi-suspect class—*i.e.*, race, alienage, national origin, or gender—trigger some form of heightened scrutiny, *see City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985), whereas classifications that do not "proceed[] along suspect lines [or] infringe[] fundamental constitutional rights" are subject only to rational basis review, *Mark v. Republic of the Sudan*, 77 F.4th 892, 897 (D.C. Cir. 2023) (quoting *Hettinga*, 677 F.3d at 478). To pass muster "[u]nder rational basis review, a classification need only be rationally related to a legitimate governmental interest." *Hedgepeth*, 386 F.3d at 1153 (citing *Kimel v. Florida Bd. of Regents,* 528 U.S. 62, 83–84 (2000)). These principles generally apply to "governmental classifications that affect some groups of citizens differently than others." *Enquist v. Oregon Dep't of Agr.*, 553 U.S. 591, 601 (2008) (citation and quotation marks omitted). But the Supreme Court has held that "even if the plaintiff has not alleged class-based discrimination," whether as against a protected class or not, "an equal protection claim can in some circumstances be sustained" through a "class of one" claim. *Id.*; *see also Vill. Of Willowbrook v. Olech*, 528 U.S. 562, 564–65 (2000). To properly state a so-called "class of one" claim, a plaintiff must show they were "intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Olech*, 528 U.S. at 564.

---

[2] Although the Fifth Amendment does not expressly include an equal protection guarantee, courts have long recognized that "the Fifth Amendment's Due Process Clause incorporates equal protection principles" that apply to the federal government. *Hill v. United States Dep't of Interior*, 151 F.4th 420, 435 (D.C. Cir. 2025).

In seeking dismissal of Guthrie's equal protection claim here, Defendants argue that Guthrie does not fall within a suspect class that triggers heightened scrutiny and that he otherwise fails to plead a cognizable claim under rational-basis review. They are correct on both fronts.

## I.    To The Extent Guthrie Attempts To Plead A Suspect-Class Claim, It Fails

The Court can quickly dispense with any potential suspect-class claim. At one point, Guthrie's complaint alleges that "[g]overnmental discrimination against individuals with prior bariatric surgery warrants heightened scrutiny[.]" (Am. Compl. ¶ 80.) But as Defendants rightly argue, the Supreme Court has never recognized that sort of medical status—or any medical status, for that matter—as a suspect or quasi-suspect class for equal protection purposes. (*See* Mot. at 4.) Guthrie does not argue otherwise. At most, he elides the issue by responding that his "equal protection theory does not hinge *solely* on suspect-class status," before immediately pivoting to a "class of one" claim.  (Opp'n at 6 (emphasis added).) By failing to engage with Defendants' argument on this score, Guthrie conceded it. *See, e.g.*, *Dawn J. Bennett Holding, LLC v. FedEx TechConnect, Inc.*, 217 F. Supp. 3d 79, 82 (D.D.C. 2016) ("It is well understood in this Circuit that when a plaintiff files an opposition to a motion to dismiss addressing only certain arguments raised by the defendant, the court may treat those arguments that the plaintiff failed to address as conceded."), *aff'd*, 2017 WL 2373115 (D.C. Cir. Apr. 4, 2017). And even absent concession, Defendants are correct that bariatric surgery patients are not a suspect or quasi-suspect class.

## II.    Guthrie's So-Called "Class of One" Claim Likewise Fails

That leaves what the parties characterize as Guthrie's "class of one" claim. The D.C. Circuit has described this variety of equal protection claim as a "rare theory," *Morello v. District of Columbia*, 621 F. App'x 1, 3 (D.C. Cir. 2015), that requires "two essential elements": "(1) disparate treatment of similarly situated parties (2) on no rational basis," *3883 Connecticut LLC v. District*

*of Columbia*, 336 F.3d 1068, 1075 (D.C. Cir. 2003) (citing *Olech*, 528 U.S. at 564); *see also XP Vehicles*, 118 F. Supp. 3d at 75 (same). In this case, even assuming the complaint's allegations suffice as to the first element, Guthrie fails to plausibly plead the second.[3]

Start with the first issue: Guthrie's need to sufficiently allege that he was "intentionally treated differently from others similarly situated." *Olech*, 528 U.S. at 564. This element is no "mere formality" because "it serves to distinguish claims to the treatment that was afforded others, which can be cognizable under principles of equal protection, from bare complaints of governmental unfairness, which cannot." *Quezada v. Marshall*, 915 F. Supp. 2d 129, 135 (D.D.C. 2013). Thus, "[c]lass-of-one plaintiffs must show an extremely high degree of similarity between themselves and the persons to whom they compare themselves." *Id.* (quoting *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010)). That being said, "whether an individual is similarly situated to comparators … is generally a question of fact for the jury," which means that resolving the issue at the motion-to-dismiss stage—at least where the plaintiff squarely pleads some similarly situated comparator—is often "inappropriate." *Lillemoe v. United States Dep't of Agric., Foreign Agric. Serv.*, 344 F. Supp. 3d 215, 228 (D.D.C. 2018) (citation omitted).

Here, Guthrie alleges that he is similarly situated to "individuals with other chronic but stable and manageable medical conditions, including orthopedic repairs, cardiac stents, and controlled endocrine disorders[.]" (Am. Compl. ¶ 78.) Defendants fault that premise as too general,

---

[3] The Court is skeptical that the "class of one" label really applies here at all. Even though Guthrie argues at one point that "*he alone* is categorically barred due to surgical history" (*see* Opp'n at 8 (emphasis added)), his legal theory sweeps considerably more broadly because he alleges that the challenged DoD policy discriminates against *anyone* and *everyone* with a prior bariatric surgery who is otherwise qualified for service—surely a class of persons, even if not a protected one. That said, at least as presented here, the distinction is immaterial as a practical matter because whether the Court analyzes the claim as one alleging an unconstitutional classification against a non-suspect group or against a "class of one," the claim's plausibility boils down to rational basis review. So, the Court follows the parties' lead and assumes that Guthrie is attempting to plead a class of one claim.

asserting that "it is impossible for a person who has [] undergone bariatric surgery to be similarly situated as one who has not[.]" (Mot. at 5; *see also* Reply at 3.) The Court is not unsympathetic to the suggestion that Guthrie might be painting with too broad a brush. But on balance, and especially since Defendants do not press this point with much force, the Court assumes without deciding that Guthrie meets the similarly situated element of the claim by alleging that he was treated disparately from other persons with "stable and manageable medical conditions" who were not barred from military enlistment on the basis of those conditions.

The Court agrees with Defendants, however, that Guthrie comes up short on the second element because he fails to plausibly allege that no rational basis exists to support the disparate treatment. This element requires a plaintiff to overcome a "strong presumption of validity," *Tate v. District of Columbia*, 627 F.3d 904, 910 (D.C. Cir. 2010) (citation omitted), as "the rational basis inquiry is highly deferential to the government," *XP Vehicles*, 118 F. Supp. 3d at 76 (citation and quotation marks omitted). "Even at the motion to dismiss stage, a plaintiff alleging an equal protection violation must plead facts that establish that there is not any reasonable conceivable state of facts that could provide a rational basis for the classification." *Hettinga*, 677 F.3d at 479 (citation and quotation marks omitted); *XP Vehicles*, 118 F. Supp. 3d at 75 ("[A]n equal protection claim fails under Rule 12(b)(6) if the complaint itself suggests a rational basis for the government action[.]"). To borrow the Seventh Circuit's framing, "it is possible for plaintiffs to plead themselves out of court if their complaint reveals a potential rational basis for the actions of [government] officials." *Miller v. City of Monona*, 784 F.3d 1113, 1121 (7th Cir. 2015).[4]

---

[4] Incidentally, Guthrie's opposition could be read as conceding this point entirely. He writes: "Here there is a reasonably conceivable state of facts that could provide a rational basis for the classification." (Opp'n at 9.) But given that the opposition otherwise argues against a rational basis for the policy, the Court gives counsel the benefit of the doubt and chalks up that statement to a typo.

Here, although the complaint offers plenty of paragraphs that attempt to undermine the defensibility of DoD's policy, Guthrie's allegations do not go so far as to "negative any reasonably conceivable state of facts that could provide a rational basis for the classification[.]" *XP Vehicles*, 118 F. Supp. 3d at 75 (quoting *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 367 (2001)). In fact, the complaint expressly describes one such rational basis in the form of DoD's own underlying justification for the policy: that "bariatric procedures … induc[e] permanent anatomical changes that require strict dietary compliance, thereby potentially interfering with operational deployability." (Am. Compl. ¶¶ 13, 61.) Even acknowledging that reasonable minds could disagree on whether and to what extent an individual's post-surgical dietary restrictions might complicate a service member's deployability, it is not difficult to conceive of circumstances in any number of military settings that might do so. In other words, DoD's assessment is at least rational.

The allegations of the complaint do not show otherwise. Many of Guthrie's alleged counterpoints are focused on advances in bariatric medicine generally, or they describe positive surgical outcomes for veterans and dependents who have undergone bariatric procedures—but not active service members like Guthrie hopes to become. (*See generally id.* ¶¶ 24–50.) To the extent Guthrie's allegations do not focus on active-duty service members, they do little to negate the rationality of DoD's concerns surrounding deployability. The closest Guthrie comes is to invoke a 2009 study conducted by "military medical researchers" concerning "33 active-duty service members who underwent open gastric bypass." (*Id.* ¶ 25.) According to the complaint's description of the study, many—but not all—of the study's subjects "retained or attained deployable status post-surgery." (*Id.*) Accepted as true, that allegation (and the study itself) would seem to lend support to Guthrie's views about the ongoing problems with the existing DoD policy. But a 2012 publication described later in the complaint—one that postdates the 2009 study just described—

explains that even among military bariatric specialists, "there is not a consensus about" whether bariatric surgery affects deployability for active-duty service members. (*Id.* ¶¶ 27, 29.)

Thus, Guthrie's allegations are mixed, at best, when it comes to the rationality of the policy. They certainly do not establish "that there is not any reasonable conceivable state of facts that could provide a rational basis for the classification." *Hettinga*, 677 F.3d at 479 (citation and quotation marks omitted). Based on at least some of the complaint's allegations, Guthrie may have a colorable argument that Defendants are perhaps not using the best means to accomplish their stated deployability goals. But "where rationality is the test," the government does not violate the Constitution's guarantee of equal protection "merely because the classifications made by its laws are imperfect." *Asante v. Kennedy*, 133 F.4th 97, 104 (D.C. Cir. 2025) (quoting *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 316 (1976)). The question is whether it is "rational" for the government "to draw the distinction it did." *Id.* And because Guthrie's complaint fails to plausibly allege the absence of any rational basis for the challenged policy—and in fact, recites the presence of one— the Court agrees with Defendants that his equal protection claim fails as a matter of law.

The Court is not swayed by Guthrie's reliance on cases out of the Fourth Circuit that dealt with military-service restrictions based on positive HIV status. (Opp'n at 9–11.) Guthrie mainly points to *Deese v. Esper*, which held there was no rational basis to allow "service members with HIV to perform ordinary military duties but to deny them officer commissions." 483 F. Supp. 3d 290, 318 (D. Md. 2020). And *Deese* followed an earlier Fourth Circuit case, *Roe v. Department of Defense*, which ruled in a preliminary injunction posture that there was likely no rational basis for a categorical service ban for individuals with HIV. 947 F.3d 207, 225–28 (4th Cir. 2020).

These cases do not help Guthrie for a few reasons. First, the Fourth Circuit in *Roe* addressed the plaintiffs' claim under the APA—expressly declining to reach an equal protection claim—and

9

found that the challenged policy likely violated the APA because the military's "proffered justifications fail[ed] to account for current medical literature and expert opinion about current HIV treatment and transmission risks." *Id.* at 225 n.3, 226. As in *Roe*, those considerations may become relevant to Guthrie's APA claims later in this case, but the Court's present analysis takes a different focus in asking whether Guthrie has plausibly pled that no rational basis exists to support the disparate treatment he is challenging on equal protection grounds. And while *Deese* did address the challenged restriction on equal protection terms (among others), that court seemingly felt bound by the Fourth Circuit's earlier analysis in *Roe* even if it did arise in a somewhat different legal context. 483 F. Supp. 3d a 317–18. Second, the rationale of those cases was focused—at least partially though perhaps not explicitly—on the historical "[s]tigma, fear, and misinformation about HIV," *Roe*, 947 F.3d at 212, and a sense that the challenged policies were at least somewhat rooted in that stigma. The D.C. Circuit recently employed a similar focus in considering another challenged military policy described as "soaked in animus" and that "stigmatize[d] transgender persons as inherently unfit." *Talbott v. United States*, 176 F.4th 720, 745 (D.C. Cir. 2026) (citation omitted). Those same sorts of stigma-focused concerns are not straightforwardly extended to the bariatric-surgery context at issue here, and Guthrie's complaint certainly does not include any allegations along those lines. In sum, Guthrie's cited cases may carry persuasive value in some relevant respects, but they do not change the Court's conclusion as to the implausibility of his equal protection claim at this juncture.

\*     \*     \*

This ruling, to reiterate, reaches only Guthie's constitutional claim, not his APA claims, as Defendants themselves acknowledge.[5] Though there is often overlap in the two analyses—and though courts sometimes shorthand the question of whether agency action is arbitrary and capricious by asking whether the challenged action is irrational—judicial review under the APA is not fully coextensive with the relevant equal protection analysis. For instance, in evaluating whether a challenged action is arbitrary and capricious under the APA, courts will ask, among other things, whether an agency "examine[d] the relevant data and articulate[d] a satisfactory explanation for its action including a 'rational connection between the facts found and the choice made,'" "failed to consider an important aspect of the problem," or "offered an explanation for its decision that runs counter to the evidence before the agency[.]" *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (quoting *Burlington Truck Lines v. United States*, 371 U.S. 156, 168 (1962)). Guthrie remains free to press these and other arguments under the APA as the case moves forward on his remaining claims.

## III.    Guthrie's Barebones Request For Leave To Amend Is Denied

In a final sentence in his opposition brief, Guthrie requests leave to amend "should the Court find that any of [his] claims are not sufficiently plead." (Opp'n at 12.) The Court denies that request. For starters, Guthrie's request is procedurally deficient. It is well settled in this Circuit that a plaintiff seeking leave to amend must file "a motion for leave to amend [a] complaint and attach[] a proposed amended complaint." *Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 130 (D.C. Cir. 2012) (citing *Belizan v. Hershon,* 434 F.3d 579, 582 (D.C. Cir. 2006)). "[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which

---

[5] Defendants expressly do not seek dismissal of the APA claims at this stage. (*See* Mot. at 2 ("Claims two and three arise under the Administrative Procedure Act … and are not at issue in this motion."); Reply at 1 ("If the Court grants Defendant's motion, Plaintiff's claims under the [APA] will still proceed.").)

amendment is sought—does not constitute a motion within the contemplation of Rule 15(a)." *Id.*; *see also U.S. ex rel. Williams v. Martin-Baker Aircraft Co.*, 389 F.3d 1251, 1259 (D.C. Cir. 2004) (same). More, as a substantive matter, Guthrie fails to explain how he could overcome the insufficiency that dooms his claim—his failure to negate the absence of a rational basis for the challenged DoD policy—by attempting to plead additional factual allegations, especially given his affirmative articulation of a rational basis in his own pleading. The Court thus denies Guthrie's throwaway request for leave to amend encompassed in a single sentence in his opposition brief.

## CONCLUSION AND ORDER

For the reasons explained, the Court **GRANTS** Defendants' partial motion to dismiss (ECF No. 19) and **DISMISSES** Claim I of the amended complaint.

Defendants shall file an answer to the remaining counts of the amended complaint by no later than August 19, 2026.

**SO ORDERED.**

Dated: August 5, 2026

MATTHEW J. SHARBAUGH
United States Magistrate Judge

12